[No. 14800.    Department One. — June 15, 1892.]

IN THE MATTER OF THE ESTATE OF GEORGE S. LADD, DECEASED.

WILLS — CONSTRUCTION. — The will in this case construed, and held to warrant the distribution of three fourths of the estate to the wife, and one fourth only to the executors upon the trusts set forth in the will and codicil, instead of one half thereof, as claimed by appellants.

ID. — CONSTRUCTION OF CODICIL — CHANGE OF TERMS OF WILL. — It must be assumed that the testator, at the time of making the codicil, used the terms therein with reference to the provisions of the will as they would be construed under the facts then existing, and with a knowledge of what property the will provided that the executors should hold in trust, and that he intended that no further change should be made in his will than that expressly declared in the codicil.

ID. — EFFECT OF CODICIL — REPUBLICATION OF WILL AS MODIFIED — MODIFICATION OF SINGLE CLAUSE. — The execution of a codicil has the effect to republish the whole will, as modified by the codicil, as of the date of the codicil; and its effect is not limited to a republication of the only clause which the codicil purports to modify.

ID. — CONSTRUCTION OF WILL AND CODICIL — REVOCATION. — The whole of the original will and codicil are to be construed as a single instrument executed at the date of the codicil, and of which all the parts are to be construed so as, if possible, to form one consistent whole; and the codicil will not be construed to disturb the dispositions of the will further than is absolutely necessary to give effect to the codicil; nor will a clear disposition made by the will be revoked by a doubtful expression or inconsistent disposition in the codicil.

ID. — SINGLE MODIFICATION OF WILL BY CODICIL — IMPLIED NEGATIVE. — A determination expressed in a codicil to make an alteration in the will in one particular negatives by implication any intention to alter it in any other respect.

APPEAL from a decree of the Superior Court of the city and county of San Francisco distributing an estate.

The facts are stated in the opinion of the court.

*Myrick & Deering*, for Appellants.

*Pillsbury, Blanding & Hayne*, for Respondent.

HARRISON, J. — Appeal from a decree of distribution. By his will, which was executed February 24, 1878, the testator gave one half of his estate to his wife, and made the following provisions respecting the other half:—

"Clause Fourth.   The remainder of my property shall remain, as hereinafter provided, in the hands of my executors, and be held or sold, and the proceeds reinvested or loaned by my executors, in their discretion, and the net income thereof, to an amount not exceeding twenty-four hundred dollars in United States gold coin, per annum, payable in quarterly installments, shall be divided equally between my beloved parents, Horace Comstock Ladd and Sarah Ann Ladd, and the remainder of the income shall be paid to my wife, Elizabeth.

"Clause Fifth.   Upon the death of either of my parents, one half of said property placed and to remain in the hands of my executors under the fourth clause of this will, shall be given to my wife, Elizabeth, to be held by her absolutely and free from all trusts, and the net income of the remainder of such property, to an amount not exceeding twelve hundred dollars in United States gold coin, per annum, payable in quarterly installments, shall be paid to my sole surviving parent until his or her death, and then the entire property shall be given to my wife, the said Elizabeth, to be held by her absolutely and free from all trusts.

"Clause Sixth.   In the event that my beloved wife, Elizabeth, shall die before either of my parents, all of said one half of my estate placed and to remain in the hands of my executors under clause four of this will shall be given to my said parents, in equal parts, to be held absolutely and free from all trusts.   And if my wife, Elizabeth, shall die after the death of one of my parents, and during the lifetime of the other, then the remainder

of the one half of the property placed and to remain in the hands of my executors under said clause four shall be given to my said surviving parent, to be held absolutely and free from all trusts."

Before the death of the testator, his father died, and on the 18th of January, 1889, he made a codicil in the following terms: —

"Whereas, since the making of the foregoing will, my father has died, and my property holdings have considerably increased, I now change the fourth clause of my said will in this regard, and to the extent only, that from the income of the property provided by said will to be held in trust by my said executors, I will and direct that monthly payments be made by my said executors to the following named persons, and each of them, during their lives, that is to say: to Mrs. Anne Sarah Ladd (my mother), one hundred and fifty dollars " (and other sums amounting to four hundred and fifty dollars, to different individuals).

The court distributed three fourths of the estate to the wife, and one fourth to the executors, upon the trusts set forth in the will and codicil. From this decree the mother and a sister of the testator have appealed, claiming that by the terms of the will and codicil one half of the estate should have been distributed to the executors upon the said trusts.

We are of the opinion that the decree of distribution made by the court was in accordance with the terms of the will and codicil. By a proper construction of the terms of the original will, upon the death of the testator subsequent to the death of his father, only one fourth of his estate was to remain in the hands of his executors. The provision in clause 4, that the remainder (one half) of his property should remain in the hands of his executors, "as hereinafter provided," was by its terms limited and qualified by the provision subsequently made in the will, which is found in clause 5, that upon the death of either of his parents "one half of said property placed and to remain " in the hands of his executors

under the fourth clause of his will "shall be given to my wife, Elizabeth, to be held by her absolutely and free from all trusts." Clause 5 is a provision of the will distinct in itself, qualifying and limiting the provision in clause 4, and from the two it clearly appears that it was the intention of the testator merely to provide a fund out of which should be derived an income for the support of his parents, and that if one parent should die before his wife, the fund should be reduced to one half of the amount originally provided in clause 4, and the other half "given to his wife absolutely"; and upon the death of both, there should be no fund whatever, but that the entire property should be "given" to his wife. If the testator had survived both of his parents, and had made no change in his will, his wife would unquestionably have been entitled to the whole of his estate; or if he had died at the date of his codicil, and had not made the codicil, his mother only surviving him, the executors could not claim that more than one fourth of his estate should "remain" in their hands, for the reason that in clause 5 it was "hereinafter provided" that upon the death of his father one half of the "remainder" named in clause 4 should be given absolutely to his wife.

It must be assumed that the testator, at the time of making his codicil, used the terms therein with reference to the provisions of the will as they would be construed under the facts then existing, and with a knowledge of what property the will provided that the executors should "hold" in trust, and that he intended that no further change should be made in his will than was expressly declared in the codicil. The execution of the codicil had the effect "to republish the will as modified by the codicil" (Civ. Code, sec. 1287) as of the date of the codicil. (*Payne* v. *Payne*, 18 Cal. 302.) Its effect was not limited to a republication of clause 4, and although clause 4 is the only portion of the will which the codicil purports to modify, yet the effect of its execution was to republish the entire will, and not merely the clause so

modified, " as if the testator had inserted in the codicil all the words of the will." (*Doe* v. *Walker*, 12 Mees. & W. 597.) The whole of the original will and the codicil are to be construed as a single instrument executed at the date of the codicil, and of which all the parts are to be construed, " so as, if possible, to form one consistent whole." (Civ. Code, sec. 1321.) A codicil is never construed to disturb the dispositions of the will further than is absolutely necessary for the purpose of giving effect to the codicil. (1 Jarman on Wills, *176.) " The dispositions made by a will are not to be disturbed by a codicil further than is absolutely necessary in order to give it effect, and a clear disposition made by the will is not revoked by a doubtful expression or inconsistent disposition in a codicil." (*Kane* v. *Astor's Ex'rs*, 5 Sand. 533.) "The different parts of a will, or of a will and codicil, shall be reconciled, if possible, and where a bequest has been once made, it shall not be revoked, unless no other construction can be fairly put upon the language used by the testator." (*Colt* v. *Colt*, 32 Conn. 446. See also *Wetmore* v. *Parker*, 52 N. Y. 462; *Johns Hopkins University* v. *Pinckney*, 55 Md. 365.)

In the preamble to the codicil, the testator gives as the reason for the change, that since the making of the will his father had died and his property holdings considerably increased; and it is to be presumed that the income had proportionately increased. By the terms of the original will, his wife would have received all the income after paying to his mother twelve hundred dollars a year, but owing to the increase of income, he increased the payment to his mother, and also provided for his brother and sister, for whom in the original will he expressly declined to make any provision, his wife at the same same time receiving from the increased income of the one fourth which fell to her by reason of the death of his father a sufficient equivalent for the other payments directed to be made under the codicil. It was " in this regard " — that is, upon consideration of these facts — that he made the codicil, by which he changed the fourth

clause of his will " to the extent only" therein expressed; and the change made by the codicil is limited by the "extent" to which he has declared his intention to make the alteration. "A determination expressed to make an alteration in one particular negatives by implication any intention to alter it in any other respect." (*Quincy* v. *Rogers*, 9 Cush. 296.)

The only change in his will which the testator purported to make by the codicil was in the fourth clause thereof, and the change which he purported to make in this clause was "only" to the extent of directing "that from the income of the property provided by said will to be held in trust" his mother should receive $150 instead of $100 per month, and that instead of paying all the remainder of the income from that property to his wife, $450 thereof should be paid to other beneficiaries. He does not either in terms or by implication change the fund from which that income is to be derived, but designates the will — not merely clause 4, but the whole will—for ascertaining the property from which to obtain the income for such payments, and declares that it is "the property provided by said will to be *held* in trust by my said executors." But the only property which the will authorizes the executors to *hold* in trust is that which he directs shall "remain" in their hands; and, as we have seen, this, after the death of the father, was only one half of the one half of the original amount set apart, since he had in clause 5 of his will directed that upon that contingency the other one half should be "given" to his wife, to be held by her absolutely and free from all trusts.

It is very clear that the original purpose of the will was, that the wife should take one half of his estate at his death, one half of the remainder at the death of one of his parents, and the other one half of such remainder at the death of the other. This purpose is not changed by any express language of the codicil, or by necessary implication from what he has said therein; and it must be held that in his making a different disposition of the income he did not intend to deprive the wife of the pro-

vision which he had previously made for her receiving a portion of his estate upon the death of either of his parents.

This construction of the effect of the codicil finds support also in clause 6 of the original will, in which it is provided that if his wife should die after the death of one of his parents, and during the lifetime of the other, "the remainder of the one half" of the property "placed and to remain" in the hands of his executors under clause 4, — that is, one fourth of the estate of which he should die possessed, — should be given to the surviving parent. It will be seen that no provision has been made in the will by which the mother can ever receive more than this one half of the "remainder of the one half of the property," which, under clause 4, was to be placed in the hands of his executors.

The decree of distribution is affirmed.

McFARLAND, J., and PATERSON, J., concurred.