[L. A. No. 5085. In Bank.—November 30, 1917.]

In the Matter of the Estate of MARIE A. MATTHEWS, Deceased. LEE R. MATTHEWS et al., Appellants, v. HOWARD LEONARD, Respondent.

ESTATES OF DECEASED PERSONS—WILL—LEGACY—DEATH OF LEGATEE—CIVIL CODE, SECTION 1310, CONSTRUED.—Section 1310 of the Civil Code, providing that the lineal descendants of a devisee or legatee, who dies before the testator, take the estate given by the will, in the same manner as the devisee or legatee would have done had he survived the testator, is a statute of distribution, and has reference to the conditions existing at the time of the making of the will, if its provisions had remained unchanged.

ID.—REPUBLICATION BY CODICIL—DECEASED DAUGHTER AS LEGATEE—LEGACY VOID.—Where a testatrix made a bequest to a daughter, and after the death of the daughter republished the will by a codicil ratifying the original will in every respect, save so far as any part was inconsistent with the codicil, such republication rendered the legacy void as a legacy to a person then dead.

ID.—CODICIL—PRETERMITTED HEIR—DESCENDANT OF DEAD LEGATEE.—Where a testatrix made a bequest to her daughter, and, after the death of the latter, leaving a son, republished and ratified the will by codicil, without mentioning the son of the deceased daughter, such son did not take the legacy originally intended for his mother, but became a pretermitted heir.

APPEAL from a decree of distribution of the Superior Court of Los Angeles County. James C. Rives, Judge.

The facts are stated in the opinion of the court.

E. J. Fleming, Wheaton A. Gray, B. F. Woodard, and Fred L. Hamblin, for Appellants.

H. T. Morrow, and William L. Kuehn, for Respondent.

MELVIN, J.—Appeal from a decree of partial distribution.

Marie A. Matthews died testate. On the 6th of May, 1902, she had made a will by which, among other provisions regarding her property, she had bequeathed ten dollars to her daughter, Mary Louise Leonard, the mother of Howard Leonard, respondent herein. Mrs. Leonard died in 1907

and in the following year her mother made a codicil by which she referred to and ratified and confirmed her will of May 6, 1902, in every respect save so far as any part of it was inconsistent with the codicil. No reference was made in the codicil to the death of Mary Louise Leonard, daughter of the testatrix, but by that instrument the amount given to Lee R. Matthews, a son of Marie A. Matthews, was increased. Respondent contends that the republication of the will by the execution of the codicil after the death of Mary Louise Leonard without mention of her son, Howard Leonard, makes him now a pretermitted heir, and the probate court so held. Appellants, on the other hand, are of the opinion that Howard Leonard is entitled to take under the will by right of representation only the amount of the legacy intended originally for his mother. They say that immediately upon the death of his mother respondent became the real legatee under the will; that section 1310 of the Civil Code then became incorporated in and was a part of the will; and that the subsequent republication of the will by the execution of a codicil merely confirmed the position of respondent as the representative of his mother under the will. The principal fault with this reasoning is that section 1310 of the Civil Code relates to the time of the death of the testatrix and not to the time of the decease of the original legatee. It is a statute of distribution and has reference to the conditions existing at the time of the death of the maker of the will if the provisions of that instrument remain unchanged. The death of his mother did not have the effect of erasing her name from the testament and writing in that of Howard Leonard in its place, because, of course, he could take the legacy intended for his mother in any case only in the event of his surviving his grandmother.

It seems clear, therefore, that when the will was republished by the execution of the codicil, the legacy to Mrs. Leonard was void as being an attempted gift by will to a dead person, and that the failure to mention Howard Leonard in the republication made him a pretermitted heir. (Civ. Code, sec. 1307.) That the making and publishing of the codicil amounts to a republication of the will as amended by the codicil has been held many times. The rule is thus stated in 40 Cyc. 1216, 1217: "The general doctrine is well settled that a codicil executed with the formalities required by statute

for the execution of wills operates as a republication of a will, so far as it is not altered or revoked by the codicil, if the intention of the testator is not thereby defeated; and the two are to be regarded as but one instrument, speaking from the date of the codicil.'' Our own Civil Code, by section 1287, announces the same rule. In *Payne* v. *Payne,* 18 Cal. 292-302, it is held that the republication of the will is tantamount to the making of that will *de novo* and that the new will so made speaks as of the date of republication. The same rule is declared in varying but unmistakable language in such cases as *Estate of Ladd,* 94 Cal. 670, [30 Pac. 99]; *Estate of Hayne,* 165 Cal. 568, [Ann. Cas. 1915A, 926, 133 Pac. 277]; *Estate of Cutting,* 172 Cal. 191, [Ann. Cas. 1917D, 1171, 155 Pac. 1002]. True, it is subject to the exception that the intention of the testator or testatrix must be preserved, if possible (40 Cyc. 1221), and courts have in many instances refrained from applying the rule regarding republication by codicil with all the severity that would attend the interpretation of a new will by which all previous wills had been set aside. *Estate of McCauley,* 138 Cal. 432, [71 Pac. 512], is an excellent example of the application of the exception. In that case it was held that where valid bequests to charity had been made by the terms of the will, they were not nullified by a republication due to a codicil having no special reference to the said bequests, such republication occurring within thirty days of the death of the testatrix, notwithstanding the fact that under section 1313 of the Civil Code an original bequest in trust for charitable uses fails if the donor dies within thirty days of the execution of the testament. But in that case, as the learned commissioner very clearly demonstrated in the discussion of the law applicable to the facts appearing in the record, there was no doubt that the testatrix intended her bequests first made in the will to stand unaffected by the codicil. In the case at bar we cannot say that Mrs. Matthews' intentions had not changed. They must have changed, because the daughter to whom she had intended to leave a legacy of ten dollars had died. Either she intended the legacy to go to her grandson as the representative of his mother or she forgot him, or, believing that the bequest had lapsed by reason of Mrs. Leonard's death, she wished to die intestate as to her grandson. In the McCauley case there had been no change in conditions between the time

of the valid bequests to charity and the execution of the codicil. Since by section 1292 of the Civil Code a will may only be revoked by express language, and since by the codicil Mrs. McCauley did not revoke but reaffirmed the valid bequests made in the earlier will, they were held good as against the limiting statute. If, without express revocation of her original will, Mrs. McCauley had made a new will embodying all that the former testament had contained regarding the bequests to charity with other provisions equivalent to those which she chose instead to put in the codicil, the two wills would have been admitted to probate and construed together (Civ. Code, sec. 1296), and the bequests to charity would, of course, have been held valid. Therefore, it was very properly decided in the construction of the McCauley will that the testatrix might do by codicil that which she might have done by a valid will supplemental in character to one previously made.

But in this case the testatrix has omitted expressly to provide for Howard Leonard, the issue of her daughter, either in the original will or the codicil, and it does not appear from either that the omission was intentional. The fact that by force of section 1310 of the Civil Code he might take his mother's legacy, if the codicil had not been executed, does not answer the requirement of section 1307 of the Civil Code, which according to our interpretation contemplates express provision by the testatrix for *such issue,* unless it be made to appear by the will that the omission was intentional. It is true that all the requirements of section 1307 were satisfied as to the original will, for *at that time* there was no issue of any deceased child, the mother of Howard Leonard being alive. There was provision for *her,* and the statute was satisfied *as to her.* (*Estate of Barter,* 86 Cal. 441–444, [25 Pac. 15].) There was then no obligation to provide for her issue. But the situation had entirely changed when the codicil was made. Howard Leonard had then become the issue of a deceased child. In so far as the requirements of section 1307 of the Civil Code are concerned, the situation must be determined as of the date of the codicil. (*Estate of Hayne,* 165 Cal. 568, [Ann. Cas. 1915A, 926, 133 Pac. 277].) If Mrs. Matthews, after the death of her daughter, had made a new will either mentioning or omitting reference to Mrs. Leonard, such a will would not include Howard Leonard and he would be a pre-

termitted heir. We see no escape from the conclusion that
her republication of the will amounted to an attempt to be-
queath property to a deceased person and that it must be
viewed exactly as if a new will had been executed.

Appellant concedes that a legacy to a deceased child leav-
ing issue is void. It was so held in effect by this court in
*Estate of Ross,* 140 Cal. 282, [73 Pac. 976], although it is
to be remembered that section 1310 of the Civil Code as it
then existed had no reference to bequests, and could not there-
fore in any view of the law be applicable to the facts of that
case. It has since been amended to include bequests within
its purview. Nevertheless the reasoning of the opinion in
that case supports the conclusion that an attempt to bestow
property by will upon one who has died prior to the making
of the will is of no force and renders the will to that extent
void. "A gift by will to one who is dead at the date of the
making of the will is void." (40 Cyc. 1052.) "A testa-
mentary disposition may be made to any person capable by
law of taking the property so disposed of" (Civ. Code, sec.
1275), and of course a dead man or woman may not take
property

In *Lindsay* v. *Pleasants,* 39 N. C. 320, the court was con-
sidering a will by which a testator had bequeathed property
in equal shares to his wife and nine children, but at the time
of the making of the will three of the children had died, and
this fact was known to the testator. It was held that the
children of the deceased children could not take by force of an
act providing that when any person shall bequeath or devise to
his child or children, and such child or children shall have died
in the lifetime of the testator, the said legacy or devise shall
take effect and vest a title to the property described and men-
tioned in the issue of such child or children—a provision very
similar to section 1310 of our Civil Code in its present form.
The court said: "The case before us is not within the defini-
tion of a lapsed legacy or devise, and therefore it is not aided
by the above statute. The legislature never thought of a
case like this, and has not provided for it. It is a devise and
bequest to no one *in esse,* or that can ever come *in esse.* It
is a void devise and bequest, *ab initio,* of three-tenths of the
residuum of the slaves and land and other property, directed
to be turned into money, and divided among the widow and
the aforenamed children."

A similar situation was considered in the case of *Doe ex dem. Hearn* v. *Cannon*, 4 Houst. (Del.) 20, [15 Am. Rep. 701], and it was held that a devise to a deceased person was a void and not a lapsed devise. Other authorities supporting this rule are *Billingsley* v. *Tongue*, 9 Md. 575; *Twitty* v. *Martin*, 90 N. C. 643; *Scales* v. *Scales*, 59 N. C. 172. In *Stennett* v. *Hall*, 74 Iowa, 279, [37 N. W. 332], it appeared that counsel on both sides admitted or at least did not deny that a bequest to one who had died before the execution of the will was void. The invalidity of that clause being virtually conceded, the court did not feel called upon to consider the question of its validity. However, the judgment was affirmed and the case is authority for the rule stated.

We conclude, therefore, that the execution of the codicil republished the will as of the date of said codicil; that so republished it gave a legacy to a person then dead; that such legacy was void; that respondent was not mentioned in the republication of the will; and that therefore he takes not under section 1310 of the Civil Code, as representing his deceased mother, but under section 1307 of the same code as a pretermitted heir.

The decree from which the appeal is taken is affirmed.

Lorigan, J., Henshaw, J., and Angellotti, C. J., concurred.

SHAW, J., Dissenting.—I dissent.

The case of the respondent rests upon the rule that the republication of a will by a codicil, whether express or implied, carries forward the language and effect of the original will to the date of the codicil, so that its effect will depend upon the conditions existing at that time; and upon the further proposition that a testamentary provision for a person who is dead at the time it is made is void. These propositions are well established, but I do not think they determine the case.

The respondent contends that the rule that the reaffirmation of a will by a codicil carries forward its effect to the date of the codicil is rigid and unvarying. This is not the effect of the authorities. The rule had its origin in England at a time when, under the ecclesiastical law, property acquired after the execution of a will, and before the death of the testator, did not pass by the will, and the principal effect of the rule

was to make the general dispositions of the will include all property acquired up to the date of the codicil. All the text-writers remark that since the act of parliament providing that a will shall speak at the death of the testator, and, so far as its terms are sufficient therefor, disposes of all property held by the testator at his death, this rule has been of less importance, and is much less frequently invoked.

The two propositions, that the execution of a codicil does not revive, in favor of the children of the legatee, a legacy which had lapsed by the death of the legatee after the making of the will and before the execution of the codicil, and that the codicil does not renew a legacy which, in the interval, had been adeemed or satisfied by the testator, are as well established as the rule carrying forward the language of the will to the date of the codicil. The principle on which these two propositions rest, especially that relating to ademption, is that the mere republication of a will by means of a codicil does not always change the legal effect of the will as it exists at the time the codicil is executed. If events occurring after its execution have removed one of the objects of the will, or canceled some of its provisions, and thereby changed its legal effect, the subsequent execution of the codicil does not, in the absence of express words, change the situation. If a legacy has lapsed, it remains lapsed; if it has been adeemed, it remains satisfied and extinguished. In the latter case, if the rule that the codicil carries forward the language of the will to the date of the codicil were applied, the effect would be to renew the legacy as given by the original will. But, as above stated, the contrary is held, and the legal effect of the will, coupled with the subsequent ademption, remains unaffected by the codicil. (1 Jarman on Wills, *158; *Powys* v. *Mansfield,* 3 Mylne & C. 376, [40 Eng. Rep. 971].)

If we apply the same principle to the present case, we will find that it upholds the present will as it was before the codicil was made, with respect to the legacy to the daughter of the testatrix, who was the mother of the respondent. The legatee, being a daughter, and the respondent being her surviving child, the legacy had not lapsed. (See Civ. Code, sec. 1310.) The rule that a lapsed legacy is not revived is therefore not even technically applicable. By force of section 1310 this legacy had not lapsed, but had been merely transferred at the death of the legatee, to her surviving child. It was

operative as a provision in his favor at the time the codicil was executed. Consequently, the will then made a valid disposition in favor of that child. The testatrix must be presumed to have known the law and to have made the codicil with that knowledge. She knew of the death of her daughter. Therefore, at the time she made the codicil she must be presumed to have known that her pre-existing will made a valid provision for this child, and must likewise be presumed to have reaffirmed it with knowledge of its effect in that particular, and to have intended thereby to continue that provision in existence.

Section 1307 of the Civil Code, relating to pretermitted heirs, applies only where a testator "omits to provide in his will for any of his children, or for the issue of any deceased child." Here, as we have seen, there was a provision in the will, as reaffirmed, for the child, Howard Leonard; a provision which the testatrix is presumed to have had in mind in making the codicil. There was no omission to provide for him, and consequently no basis for the claim that he is a pretermitted heir.

All of these rules are but applications of the paramount rule that the courts will always, if possible, ascertain the intent of the testator and will carry out that intent so far as it is lawful. A republication of the will at a later date implies that the testator intended it to be operative as of that date, so far as its language would make it so, and so far as the law permitted; therefore, the courts so hold. If a legacy was adeemed, a subsequent republication would not, of itself, carry any implication of an intent to give it again to the same person. Nothing but express words would do that. Hence the courts hold that such adeemed legacy is not renewed by a codicil. So, by like reasoning, where a legacy is given to a relation who afterward dies, leaving a surviving child to whom the legacy would pass by force of the law, a subsequent republication raises no inference of an intent to revoke the provision thus remaining operative, and, accordingly, the courts should infer an intent to leave it in force. (See *Estate of McCauley,* 138 Cal. 435, [71 Pac. 512].)

Sloss, J., concurred.